UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MARK HANNA                                    CIVIL ACTION NO. 12-cv-0494

VERSUS                                        JUDGE FOOTE

BOSSIER PARISH CORRECTIONAL                   MAGISTRATE JUDGE HORNSBY
CENTER, ET AL

## REPORT AND RECOMMENDATION

**Introduction**

Mark Hanna ("Plaintiff") is a self-represented prisoner who alleges that five Bossier Parish sheriff's deputies escorted him to a remote area of the jail and beat him on the evening before he was released. Defendants have filed a Motion for Summary Judgment (Doc. 54) on the grounds that Plaintiff did not exhaust his administrative remedies prior to filing his complaint. For the reasons that follow, it is recommended the motion be granted.

**Relevant Facts**

An assistant warden of the Bossier Parish Medium Security Facility testifies in an affidavit that Plaintiff's inmate file shows that Plaintiff signed a property issuance form when he was booked into the facility on December 17, 2010. Plaintiff acknowledged on the form that he received a copy of the Bossier Sheriff Corrections Inmate Handbook. Plaintiff describes the Handbook as approximately 50 pages of policies, rules, and regulations.

The assistant warden attaches to his affidavit pages from the Handbook that set forth an Administrative Remedy Procedure ("ARP") that instructs prisoners they must use the

procedure before they can proceed with a suit in federal or state court. The plan states that inmates must be made aware of the ARP system by oral explanation at orientation. The procedures are to be posted in writing in areas readily accessible to all inmates.

The plan requires that a grievance be initiated within 90 days of the incident on which it is based. The method for initiation is a letter from the inmate to the warden, either on a form ARP-1 or any written communication that contains the phrase: "This is a request for administrative remedy." The first-step grievance is to be investigated and responded to by the warden or his designee. If the prisoner is dissatisfied, he may pursue a step-two appeal to the Major of Corrections. Relief available under the plan includes an award of monetary damages.

Plaintiff offers a document titled affidavit, but it is not sworn before a notary. Plaintiff does state in the dated document that he makes the affidavit "under oath and penalty of perjury if given falsely." The document is not an affidavit, but it does appear to satisfy the requirements of an unsworn declaration under penalty of perjury, as permitted by 28 U.S.C. § 1746, which may be competent summary judgment evidence. Hart v. Hairston, 343 F. 3d 762 n.1 (5th Cir. 2003). Plaintiff states that, on the evening of March 10, 2011, without provocation on his part or any other justification, five deputies escorted him to a remote area of the jail where they physically attacked and terrorized him. Plaintiff states that the deputies left him with kick marks, Taser burns, and a black eye. Immediately afterward, some of the deputies escorted Plaintiff to an isolated lockdown cell where he remained until released from custody on completion of his sentence at about 8:30 a.m. the next morning. While in

lockdown, Plaintiff was not visited by medical personnel, investigators, officers, or other inmates. He had no writing material or copy of the Handbook.

Plaintiff states that he was escorted to the booking desk area at about 8:30 a.m. All the property he possessed in his dorm unit before the attack, plus some clothes he had in storage, were returned to him. The Handbook was taken from him, and he never saw it again. Plaintiff states that the Handbook is deemed by prison rules to be a returnable item, and inmates may be assessed a financial penalty if they do not return it upon release or transfer. Plaintiff states that he was then escorted to the parking lot, where his sister waited in her vehicle. They loaded Plaintiff's property and drove away. He never returned to the Bossier jail.

Plaintiff did, however, find himself incarcerated again. When he commenced this civil action in February 2012, he was housed at the Jackson Parish Correctional Center. He is currently jailed in the Avoyelles Correctional Center. A Bossier official testifies that a review of the relevant grievance records found no ARP grievance filed by Plaintiff about the alleged incident that is the subject of this action, or about any other incident or condition. Plaintiff does not contend that he filed a grievance at the Bossier facility or any other jail or prison regarding the alleged attack.

**The Exhaustion Requirement**

Congress has commanded that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted." 42 U.S.C. § 1997e(a). The statute requires proper exhaustion in accordance with prison or jail procedures. Woodford v. Ngo, 126 S.Ct. 2378 (2006). The statute's reference to actions "with respect to prison conditions" is interpreted broadly and includes those actions that allege the use of excessive force. Porter v. Nussle, 122 S.Ct. 983 (2002). Exhaustion is a prerequisite to suit even when the prisoner seeks relief not available in grievance proceedings. Booth v. Churner, 121 S.Ct. 1819 (2001).

Defendants argue that Plaintiff was required to file an ARP grievance regarding this incident, despite his release from custody, because the ARP plan described in the Handbook was available to him and could have been used to address his allegations even after he was discharged. Defendants point to the following provision of the ARP plan:

> Discharged Inmates: If an inmate is discharged before the review of an issue that affects the inmates (sic) after discharge is completed, or if he files a request after discharge on such an issue, the institution will complete the processing and will notify the inmate at his last known address. All other requests shall be considered moot when the inmate discharges, and shall not complete the process.

Exhaustion is an affirmative defense, so the burden is on Defendants to demonstrate that Plaintiff failed to exhaust available administrative remedies. Jones v. Bock, 127 S.Ct. 910 (2007). Defendants "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010).

While it is a question of law whether administrative remedies qualify as being "available" within the meaning of Section 1997e(a), availability may sometimes turn on

questions of fact. Dillon, 596 F.3d at 266. Judges may resolve factual disputes concerning exhaustion without the participation of a jury. Id. at 272.

**Analysis**

The mere fact Plaintiff was released from custody after the incident does not itself excuse the lack of exhaustion. The statute states that no action shall be brought "by a prisoner confined in any jail, prison, or other correctional facility" until available administrative remedies are exhausted. Plaintiff was incarcerated when he filed this suit, so whatever remedies were "available" to him had to be exhausted before this civil action was filed in court. Williams v. Henagan, 595 F.3d 610, 619 (5th Cir. 2010). See also Blank v. Tabera, 544 Fed. Appx. 480 (5th Cir. 2013) (prisoner who was transferred to another facility, ill for two months, and placed on home release was not excused from exhaustion) and Lindsey v. Striedel, 486 Fed. Appx. 449, 452 (5th Cir. 2012) (transfer to separate prison facility does not excuse failure to exhaust).

Defendants argue that the Discharged Inmates provision of the ARP policy specifically contemplated the filing of a grievance by an inmate after release. Plaintiff argues that the language in the plan was not sufficiently clear to direct that he had to file a grievance before suit even though he had been released from the Bossier facility. The Fifth Circuit in Williams v. Henagan applied a virtually identical Discharged Inmates provision that is contained in the Louisiana DOC ARP plan. See La. Admin. Code, § 22:325(G)(9). The prisoner argued that he was not required to exhaust confinement claims regarding religious services, search and seizure, and the like because he had been released from prison. The

Court stated that the plan provision for discharged prisoners did not excuse the failure to file an ARP. The Court interpreted the plan language to mean that ARP requests filed and pending at the date of release would be moot if not yet resolved. But the language did not excuse a failure to file an ARP at all. The prisoner was incarcerated (at a different facility) when he brought his suit, so he had to exhaust available remedies before filing in federal court. Williams, 595 F.3d at 618-19.

The undersigned agrees with Plaintiff that the ARP plan could have been written with more clarity, but it does state that "if he (the former inmate) files a request after discharge on such an issue (one that affects him after discharge), the institution will complete the processing and will notify the inmate at his last known address." A claim for damages from a beating would fall into that category and would not, as with a claim for injunctive relief, be rendered moot by a discharge or transfer. The Fifth Circuit in Williams interpreted identical language to require a released and later reincarcerated prisoner to exhaust his administrative remedies under the applicable plan. Accordingly, the terms of the plan required Plaintiff to exhaust the claims presented in this suit.

Plaintiff argues that the administrative remedies were not available to him because he no longer possessed the Handbook after he was discharged, which happened just hours after the alleged attack. There is undisputed evidence that Plaintiff was provided the Handbook during his several months of incarceration, and Plaintiff does not deny that he was generally aware of the ARP requirements. The Fifth Circuit has held that a blind prisoner who was "well aware of the general procedural requirements described in the inmate handbook" was

required to exhaust his administrative remedies despite his quarrel with the details of the grievance procedure. Farrington v. Louisiana Department of Corrections, 315 F.3d 529, 532 (5th Cir. 2002). Plaintiff may not have possessed a copy of the Handbook after his discharge, but he does not deny that he was generally aware of the ARP provisions in the Handbook.

Plaintiff's filings indicate that he is articulate and intelligent. If he had any doubts about the details of the procedure, such as whether it was still applicable to his claim under the Discharged Inmates provision, he could and should have contacted Bossier authorities to ask for a copy of the ARP plan or inquire how to present a grievance on the beating claim. He could have then exhausted his administrative remedies based on their instructions. If the authorities told Plaintiff that, as a released prisoner, he did not have to exhaust, then Plaintiff would have an estoppel argument to offer in response to the exhaustion defense. If Plaintiff filed a grievance and Bossier authorities denied it on the grounds the ARP did not apply to a former inmate, the authorities could not prevail on an exhaustion defense. See Allard v. Anderson, 260 F. Appx 711, 715 (5th Cir. 2007) (prisoner not required to exhaust when his illness manifested after transfer and ARP at original jail did not apply to former inmates).

Plaintiff's unsworn declaration indicates that he did not have the time or ability to file a grievance before his discharge. But he did have ample time and ability to file a grievance after he was discharged. He may have lacked perfect information about the ARP procedures, but he had a general awareness of the grievance system, and means were available to him to learn the details. He could have done like the former prisoner in Rogers v. Brown, 2014 WL 572384 (N.D. Tex 2014) who claimed he was beaten twice shortly before a transfer. The

former prisoner and his ex-wife had evidence that they attempted to contact the sheriff's office several times and tried to give them the prisoner's written reports about the incidents. That evidence defeated a defense motion for summary judgment that raised an exhaustion defense.  Plaintiff did not attempt any such steps.  There is no evidence he mailed a grievance, made a phone call, or took any other step toward ensuring that the ARP requirements, of which he was generally aware, were satisfied before he filed suit.

The undersigned finds, under these facts and Fifth Circuit precedent, that Defendants have established their defense that Plaintiff did not exhaust available administrative remedies before he filed this action.  This may seem harsh, but the Fifth Circuit takes a strict approach to the exhaustion requirement.  Dillon, 596 F.3d at 268. That strictness was demonstrated when the Dillon Court refused to excuse a lack of exhaustion despite the confusion, transfers, facility closures, and disruption in the prison system in the aftermath of Hurricane Katrina.  Plaintiff had remedies available to him.  He merely had to write a letter or make a phone call or two to ascertain the details of how to commence a grievance.  He did not do so, so he did not satisfy the exhaustion requirement, and his complaint must be dismissed.  The dismissal should be with prejudice to refiling the complaint as a pauper, considering the heavy burden that unexhausted prisoner complaints place on the courts and society.  See Fitch v. LA Dept of Pub. Safety & Corr., 2009 WL 1076749, *3 (W.D. La. 2009).

Accordingly,

**IT IS RECOMMENDED** that Defendants' **Motion for Summary Judgment (Doc.**

**54)** be **granted** and that Plaintiff's complaint be dismissed with prejudice to the right to refile it in forma pauperis.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 29th day of April, 2014.



Mark L. Hornsby
U.S. Magistrate Judge